Now you have an inventory of basically of law clerks that are going to be taking notes on what you have to say. Understood, Your Honor. And your prospective customers as well. Thank you and good morning, Your Honors, and may it please the Court. My name is Scott Burrows. I'm here representing the appellant to Lor International, Ltd. I'd like to reserve five minutes for rebuttal and begin by pointing out a nuance that exists in this case that may not exist in many of the cases that you've decided in the past. And that's that the infringement in this case consists of 24 different jewelry styles, different jewelry designs. And that's important in this case for a number of reasons. And that importance should be viewed in light of the reasons behind the Copyright Act and the fact that copyright infringement is a tort. As the Court in Calpacian said, Calpacian being the infamous B-pin case that was cited by the District Court and was relied on by the defendants in this action, the guiding consideration in drawing the line under the Copyright Act for infringement is preserving this balance. The balance between competition and the protection that you're given if you create something. Now, the Copyright Act was promulgated to incentivize creation. We're richer as a society if we have more designs and more styles. And if you have a company that has stolen not just one, but 24 designs, you have a chilling effect. You have a situation where a design company like my client isn't going to spend the time and money to develop new designs. Not only to develop the new designs, but to do the market research to see what is successful, what appeals to the customers. Lau, in this case, has not only taken 24 different designs, its entire collection from my client's creative expression, it's used my client's customers for market research. So not only did it copy here, it also cherry-picked the successful designs and brought those to market to compete with our client. Now, in addition to the aims, the intent of the Copyright Act, we need to look at infringement as a tort. And there's a long line of cases. Can you address the question of whether the district court correctly concluded that these designs were entitled to thin versus broad protection? Absolutely, Your Honor. And in that context, we have to look at thin and broad protection. Not as a binary, you either have thin or you have broad protection. It's more of a spectrum. Croft, the court in Croft v. McDonald's, the seminal case that identified the extrinsic and intrinsic test that we still rely on and use today, they said that the more abstract, the more creative your material is, the further along you get on this spectrum. If we look at the phone book from Feist as being on the far left, that's the thinnest protection you can have for a phone book that's organized a certain way. And if on the far right you have something like a painting, maybe Gustav Klimt's The Kiss or John Steinbeck's East of Eden, something that's very creative, the jewelry designs in this case would be somewhere in the middle. They're not as simple as the arrangement of facts in a phone book. Sure, they may not be as complex or creative as Gustav Klimt's The Kiss, but they're somewhere in the middle. And what the court did was it made that binary decision. It looked at the pieces and decided, well, I don't think that it's really creative, so I'm going to give it the least possible protection. And that was error. So it's not that it's a question of whether it's thick or thin. It's where on the spectrum it should fall. And this design or these designs should have fallen further toward the creative pole than toward the non-creative pole. But was it part of the problem that the district court looked at the material used in the manufacture of the jewelry and said, there's nothing particularly innovative about nautical rope-style jewelry, although I'm troubled by the fact that the district court sort of seized on the clasp as the one feature that was common and therefore it couldn't be entitled to much protection. Can you address that? Yes, your honor. That raises three important points. The first of which, his position that it's not innovative, is a confusion of patent law and copyright law. There's no such doctrine as prior art in copyright law. The fact that something's not innovative, it doesn't matter. It's irrelevant. Well, nautical rope has been around for centuries, right? There's nothing particularly new and creative about nautical rope. Well, your honor, the nautical rope was something created by my client. The rope itself is not the basic element here. These ropes are created by twisting stainless steel to create nautical rope. Right. But the idea for doing that, I mean, okay, so you use steel wire, but somebody making maritime rope uses hemp. Right. Okay. So what's creative about nautical rope? Well, the creativity, your honor, lies in the decisions made in both the creation of the rope itself and the combination of that rope with different elements. To get to the nautical rope, you're making a selection of materials, a selection of color, a selection on how to treat the stainless steel strands to create the rope. You're also figuring out which type of intensity to use to twist the rope. You can twist these ropes in different ways to create thicker, chunkier strands or thinner, more sleek strands. There's a number of creative decisions that go into just creating the nautical cable. But it's true that the nautical cable has existed. But the use of it in combination with these adornments is what's protectable, the combination of elements. And it's especially apparent that there's enough creativity here when you look at the entire collection of works. There's 24 works at issue, each of which entails and is comprised of numerous artistic decisions, from, again, the coloring, the selection of material. We know under Cavalier that all of that has to be looked at. The judge in the lower court didn't consider the selection of material, didn't consider the colors, didn't consider the protection. It seized on, as Your Honor noted, this lobster's clasp. That was the one articulable difference that Judge Klausner relied on in the district court case. And that was air. Initially, that's a functional element. A functional element is not entitled to protection. Second, the court is, and this is something else that Crawford's. You don't dispute that characterizing the clasp as a common element is fair. It's fair and it's functional, yes. And the decision to seize upon the clasp is also air because it's a textbook dissimilarity analysis. As Crawford says in numerous cases since, including L.A. Print-Ex v. Royal Postal, which was decided recently, they all indicate that dissimilarity analysis is improper. You're looking for similarities. Anyone can point out a difference between a set of works. In Croft, the court says that the defendant's penchant for pointing out the fact that the mayor character, this was a case involving the plush cartoon-type characters, one was wearing a sash, one was wearing a cummerbund. Doing something like that is air, and the court's done the same thing. It's pointing out the lobster clasp is different from the end caps used by my client, and that's a dissimilarity analysis. That's air. So you were talking about cherry-picking earlier. I take it that the alleged infringer here was selling to some of the same wholesalers that your client was selling to at, I assume, substantially lower prices than what your client was charging. Absolutely, Your Honor. The temporal nature of the infringement here makes clear the copying. Three of the defendants, Tappers, Hudson, and Miami Lakes, were clients of my client Allure. They stopped buying from my client Allure and almost immediately began buying from the defendants, Lau. So not only does that establish access, but the temporal proximity between the cessation of business with my client and the new business with Lau indicates copying or makes more probable than not copying. What also makes more probable than not copying is the fact that there's no independent creation evidence in this case other than a hearsay sketch that was provided by Lau's Hong Kong supplier for the pieces at issue. And in Roth and other cases, courts have held that it's air to find no substantial similarity at the summary judgment stage when there's no countervailing evidence of independent creation. And in this case, there is that one document, but again, it's an unauthenticated document where the defendants concede they don't know who created it. These are the pencil sketches? The pencil sketches, precisely. They're unable to state who put pencil to paper. They indicate they were provided from the Hong Kong manufacturer to them, but that's all we know about the provenance in their hearsay and they shouldn't have been considered by the court. Now, going back to the collection argument, which we think is so important here, you have these 24 pieces and you have a collection created by Lau that's comprised of these pieces in total. If you allow Lau to isolate each piece and compare only the similarities between each piece, you're allowing them to subvert the import of the copyright act, the thrust of the copyright act, and you're also allowing them to parcel out their tortious conduct. If copper infringement is a tort and we're instructed that it is, we should be looking at the tortious conduct in total. We should be looking at what they took from each of the pieces combined. Croft picked up on this nuance. In Croft, there was the Puffin Stuff program, some pieces of merchandise. When they did the analysis, they compared everything. They said, we're going to look at the creative work at issue, we're going to look at what was taken, and we're going to find infringement or not infringement. In that case, they found infringement. Roth was the same way. There were seven greeting cards in that case. The greeting cards I would submit were less creative than the designs at issue in this case. Counsel, I must confess, and my wife will confirm this, that I'm woefully ignorant of how jewelry collections are displayed at Nordstrom or some of the other places that she thinks I should spend more time. Are we talking about the fact that these are actually displayed in a display case as a collection of different designs by the same manufacturer? Yes. Not only are they displayed in the same type of way, they're displayed in such a way that mimics the way that Allure displays them. That's why we're able to point out in this case evidence that you don't often see, which is actual customers. This is the audience response test they talked about in Dr. Seuss. Customers for the Lau product contacted Allure afterward and said, my Allure bracelet is broken, or my Allure bracelet, I'd like to replace it. It was Lau product. So we have real evidence of people finding these pieces to be not only substantially similar, but so identical that they believe that my client created them. And the advertising is done in groups. Certain of the pieces are called stackable bangles because the people that wear them wear four or five of them at a time, which is another reason why they should be compared collectively. And finally, certain of these pieces were even registered as a single unit, registered as a collection. So in that situation, you have to compare them in total because they're a single unit as defined by the CFR. I'm running out of time,  Thank you. Good morning. May it please the court. Robert Helping for the appellees and defendants. The district court in this case followed Satava versus Lowry to the letter. And here's what it did. In Satava, that's the jellyfish sculpture case. In that case, the court found that the individual elements of the copyrighted work were not protected individually. But it found, and that was a case involving preliminary injunction, but it found that it was theoretically possible that the selection and arrangement could be, that selection and arrangement of those unprotectable elements could be protected. In our case, the court also found that the individual elements of this nautical cable jewelry was not, or are not protectable in themselves. And there's been no suggestion either in the court below or on this appeal. And as Judge Costner pointed out, there is no indication that the plaintiff claims that the individual elements are protected. So what they claim is that the selection and arrangement is protected. The court here said it's not. The selection and arrangement is not original. Under Satava versus Lowry, the elements have to be numerous enough and original enough to provide for protection for the selection and arrangement. In this case... Well, the district court concluded that it was entitled to thin copyright protection. So even if the district court got that right, why isn't this a jury question as to whether the copies are virtually identical? Well... The analysis of the district court really hinged on the clasp, which is a functional element. So tell me why the district court got it right in that portion of the analysis, not whether it's entitled to protection at all, but why this case shouldn't go to the jury. Well, I'm not sure that it did get it right in that respect. Because if you hold that the individual elements are not protectable, as the court did hold, then it said that some contributions were copyrightable. And it named what those were, the color of the metal and various other things. Well, what Satava said, that theoretically those things are protectable. But here we have a case where we're not talking about theory. This isn't a preliminary injunction. This is a motion for summary judgment. So the question is whether they are protected. And they aren't protected. So the court, I don't believe, got it right in that sense. I think that the court... There was no basis for finding that there was any protection at all. The court did find there was, though, because it found that some of these what it called copyrightable contributions entitled it to thin protection. When there's thin protection, there has to be virtual identity between the defendant's goods and the plaintiff's goods. In other words, there has to be almost an exact reproduction. Counsel, the problem I'm having with your argument is why shouldn't a jury make that determination? There are three elements, maybe elements is the wrong word, but three things that really bother me about your position. One is the comparison, which I thought was very effective in the plaintiff's briefing of the pieces of jewelry side by side. And just looking at the comparison, they look awfully similar to me. Second is the fact that your client doesn't have a very good explanation as to how these designs came to be. And in considering the temporal manufacture of the jewelry, it sure looks like they were being copied from the plaintiff's jewelry. And the third issue is the sales to the same wholesalers and the confusion by the customers in returning these pieces back to the plaintiffs for exchange or repair. Isn't that sufficient on summary judgment to show there are contested issues of material fact that a jury's going to have to sort through rather than asking the district court to declare as a matter of law that these can't fall within copyright protection? No, Your Honor. The confusion part of it has nothing to do with this case. That's a trademark concept. It's not a copyright concept. The question here is what... Because in other words, you're saying that... Why is that not relevant to the copyright claim? Take, for example, my question with regard to the origin. As I understand it, the best your client can say is we make this stuff in Hong Kong and there's some jewelry manufacturing company there and they work off of these pencil sketches which are pretty vague in terms of detail. And then I look at the side-by-side comparison of the jewelry and it just seems to me that it's a jury question as to whether your client's explanation for how these things came into being might better be answered by saying we took the plaintiff's jewelry and we set it on the workbench and we set out to make an almost identical piece of jewelry using cheaper materials and then we undersold the plaintiff. Now, you say that's a trademark issue but why doesn't that also go to the mens rea behind the copyright infringement? Because... Well, let me first address the temporal aspect of this. You refer to the pencil sketches. The way my client works is he describes what he wants from his manufacturer. The manufacturer then goes out and produces them. In this case, the manufacturer supplied these pencil sketches to him. It's not hearsay. There's no question that those are... Well, how are they authenticated? Was there a witness who said I'm the manufacturer and these are my sketches and from these sketches I manufactured these products? What we have is my client saying I received these back from my manufacturer. I described them to him. He provided them back to me. So that is something that he received. And in 17 of these cases it was before they even claimed to have created the copyrighted work. But we don't have the testimony from anybody in Hong Kong that these are the sketches that I made based on the oral request of your client for what he wanted. But my client says he received these sketches before they created their works. Well, in my concern, my question really goes to the same concerns expressed by Judge Tallman, which is let the jury hear it. Let the jury figure out whether the sketches were received before or after, when the conversations occur. What the plaintiffs have is a whole, not just one piece of jewelry, but an entire line of jewelry and then they're able to demonstrate that there is a line created by your client that looks awfully similar. And so whether there are sufficient explanations that the jury can reject or accept, whether in fact the items are virtually identical or not, those to me are questions that should be left up to the jury. They look pretty similar to me, but I'm not the one making that decision and so why should the trial court be making that decision as well? The question isn't whether they're similar. The question is whether they're virtually identical. Well, virtually identical or substantially similar really depends on whether it's thin or broad protection, but that goes back to my original question to you. Let's assume the district court got it right, that it is entitled to thin protection and so the test that the jury will be given is virtually identical. The test isn't that it has to be exactly the same. So why isn't the jury entitled to make the decision as to whether the jewelry is virtually identical or not? Because the court can tell just by looking at them side-by-side that they're not virtually identical. I'm not sure I can do that. I mean, we're reviewing, are we not, de novo? Because if I take your position, we make the determination as a matter of law that I can look at these side-by-side comparisons and declare there's no way that a rational juror could ever conclude that they are virtually identical. Don't we have to be able to say that? You have to be able to say that. That's what Judge Klausner did by looking at them. But with all due respect to Judge Klausner, if we're here on de novo review, what he thought really doesn't matter is what we think, right? Absolutely. And I have great respect for Judge Klausner. I don't mean to cast aspersions on him, but I'm just looking at the same thing he looked at and scratching my head as to why he ruled the way he did. Well, let me explain. In one case, they were comparing a ring to a bracelet. A ring and a bracelet aren't virtually identical by any stretch of the imagination. In another case, they were comparing a leopard head to a panther head. A ring and a bracelet are... A ring and a... Their work was a ring. Our work was a bracelet. I'm sorry, I might have been the other way around. But a ring is not going to be virtually identical to a bracelet. There's no way that it can be. In another case, they were comparing a panther head... Well, you could have a ring. You could have a ring that's designed to match a bracelet. You know, the color of the stone. Well, the way that they're constructed makes them different. I mean, a ring is going to be more of a circle and a bracelet is sort of an oval. But that's just one of the 24... Well, if somebody's wearing a bracelet and then a ring... You could tell if they're made by the same designer, perhaps. You know, what this all comes down to is... You look at this and... I'd look at this and I'd say, Well, here's your product. Here's the other party's product. And I want to buy one for my wife. I'm having a good idea of her taste. I'd select the Allure collection. Well, I'm sure the plaintiff will be glad to hear that. But this isn't a question of quality. This isn't a question of quality. It's a question of whether their product is protectable and if it is, how much protection it gets. Let me just... Well, these things are so ethereal. That's the practice we use. We're in a competitive economy. We're told that copying's okay, but palming off your product to someone else's, you can't do that. Absolutely not, Your Honor. You don't want to get... Absolutely not what? But that's not what's happening here. As I said, 17 of these 24 things were created before they even produced theirs. Here's my problem. I'm looking at USCA 9. It's a three-column... It's a three-column exhibit. The first column shows the sketch. The second column shows the Allure product. And the third column shows your client's product. And are you telling me that this sketcher in Hong Kong just came up with these designs off the top of his head that look virtually identical to... It's not that unusual, Your Honor, because these products are all over the place. This is not something original. They weren't the first to do it. There was a company called FredSA that did it before even they did. This type of nautical cable product is sold by hundreds of companies. But it just strikes me... I'm looking at four different examples out of the 24 that are all almost the same thing. It's like being struck four times by lightning. I just... I look at that and I think, why isn't this a knockoff? Well, maybe they knocked us off. Who knows? Well, maybe so. But a jury is the best test I know of to decide who's infringing whom. But this isn't a knockoff case. This is a copyright case. This is a question of whether they have protection and whether their protection... the extent to which it extends. The reason why the clasp is so important is because the clasp is different in almost every case. So if the clasp... That's something that Your Honor can readily see. I'm not concerned about the clasp. I'll grant you the clasp is different. But then I look at all of the other pieces, components, I'm not sure what the right phrase is, that make up the product, and they're all almost identical. But they have to be virtually identical. Well, I mean, I cannot say as a matter of law that they are not. And if that's the conclusion I reach, doesn't it go to a jury? Didn't the district court commit reversible error when it granted summary judgment in your favor? I think that the clasp and the other things that it pointed out that were different about them means that as a matter of law I could hold that they were not virtually identical. Had I run out of time? Thank you very much. Thank you. We would agree, Your Honor. This is what you guys do for a living all day. I spend a lot of time looking at jewelry here, Your Honor. Yes, yes. But we would agree that this is a quintessential jury case. I hear mother sent you to law school. Well, we think that the evidence is strong enough that summary judgment should be entered in favor of our client on substantial similarity, especially in face of the incredible evidence of independent creation by the defendants. They can't even identify the person that apparently made these sketches. It's not credible. Have you ever been to one of these factories in Hong Kong? Huh? I haven't set foot in one, but I'm familiar with them from investigation. Well, have you been there? I have not been to Hong Kong, Your Honor. Okay, there's a... I went to one, a big one, with somebody I know, and it's huge space. And then you see lines of people, working lines, lines, lines. They're all making things. They've got these little eye scopes on, you know. And... I had a woman that owns this business. It was like the dragon lady, you know. And looked at all these people. Said... I asked her, how do they stand there, stand working there? You know what she said to me? They have no choice. And... I guess that's where a lot of the creative stuff takes place. Well, Your Honor, what you didn't see... This was a huge, huge operation. What you most likely didn't see in that operation, and what there certainly hasn't been shown in this case, is that this O.J.M. factory in Hong Kong didn't have any designers at all. There's no evidence in the record that they even employed designers, let alone the designer that supposedly created these sketches. That's a booming lacuna. When we're looking at who created these pieces for the defendants, there's nothing there. It's an unnamed person who created sketches at some time. Give me the definition of lacuna. I looked it up once and forgot it. A void. It's an empty void. Lacuna. Lacuna, that's it. Because usually in a copyright case, person A claims you have created the work, person B says, no, I created the work. Here we don't have that. We have person A, in the form of Jack Zemmer, saying, I've been doing this for 30 years. I created these designs. In response to that, we have a sketch from an unknown person at O.J.M., a company that we don't even know if they employ designers. And that imbalance, we think, is enough to establish summary judgment for the plaintiff on substantial similarity. But even if we can't get there, this is a case that should go to a jury. We already have in the record right now, reasonable minds differing, don't we? We have Judge Klausner saying, there's no way these are copies. And then we have consumers of the product saying, we think these are virtually identical. When consumers, and it is relevant under the copyright analysis, the Dr. Seuss case we cited, discusses the audience response test, we have consumers believing these are virtually identical. We have them trying to return them to allure, thinking they're allure pieces. And if we have to weigh those, and again, this is no disrespect to Judge Klausner, but if we have to weigh the response of a consumer of this product against Judge Klausner, we believe the consumer of the product opinion should have more weight. And that is borne out by the case law. In the Koff case, for instance, the products were targeted to children. So the Ninth Circuit in that case said, well, we should look at it as a child would respond to these items because we should look at the reasonable observer. And in that same case, they note that's why substantial similarity is such a perfect issue for the jury because you need the ordinary reasonable observer's response to the similarities between the pieces. We think that when they review these pieces, they'll find, and it's inexorable, they'll find that these pieces are substantially similar or virtually identical. And... Your time is up. My time is up. But one other item that we didn't highlight that I just wanted to make sure is covered is the inverse ratio rule. We have this doctrine in the Ninth Circuit that if there's access, the substantial similarity bar should be lowered. Judge Klausner didn't reference that at all in his opinion, which we think is also air. Thank you. Thank you. Thank you. All right. We're going to take a recess while there's some arrangement space.
judges: Pregerson, Tallman, Nguyen